*Formatted for Electronic Distribution*                                    *Not For Publication*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
July 19, 2019

_____

**In re:**

    **John H. Holland,**                                    **Chapter 7**
          **Debtor.**                                    **Case # 18-10488**

_____

*Appearances:  James McFaul, Esq.*                 *Tavian Mayer, Esq.*
            *St. Johnsbury, Vermont*                 *South Royalton, Vermont*
            *For the Debtor*                 *For U.S. Sports Camps, Inc.*

## MEMORANDUM OF DECISION
### DENYING CREDITOR'S MOTION TO ENLARGE TIME AND DELAY ENTRY OF DISCHARGE

In this contested matter, the Court weighs a creditor's plea for additional time to determine if it has grounds to seek either an exception of its debt from discharge or dismissal of this case, against the Debtor's right to a prompt discharge of his debts and a fresh start. The creditor, U.S. Sports Camps, Inc., engaged in state court litigation with the Debtor and, ultimately, obtained a $470,000 arbitration judgment against the Debtor, prepetition. The creditor asserts the statutorily authorized time period for it to decide if it should file an objection to the Debtor's discharge of its debt or a motion to dismiss this bankruptcy case was not sufficient, and it should be granted additional time. The Debtor opposes the creditor's motion for an enlargement of time and the corresponding delay in the entry of his discharge.

For the reasons set forth below, and based on the facts of this case and the pertinent caselaw, the Court finds U.S. Sports Camps, Inc. has failed to demonstrate cause for an enlargement of time or a delay in the entry of the Debtor's discharge.

### JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. The Court declares the creditor's motion to enlarge time, and the Debtor's objection thereto, create a core proceeding for purposes of 28 U.S.C. § 157(b)(2)(A) and (J), over which this Court has constitutional authority to enter a final judgment.

1

## PROCEDURAL HISTORY

On February 8, 2019, U.S. Sports Camps, Inc. (the "Creditor") filed a motion (1) to enlarge the time for it to file (a) a complaint to determine the dischargeability of its claim, under 11 U.S.C. § 523, and (b) a motion to dismiss this case, under 11 U.S.C. § 707; and (2) to delay entry of the Debtor's discharge (doc. # 16, the "Motion"). The Creditor asserts it needs 90 additional days to "fully develop" its claim that the prepetition arbitration judgment it obtained against the Debtor, in the amount of approximately $470,000, based on the Debtor's breach of a non-compete clause, is not dischargeable or is a sufficient basis for dismissing this case. In the Motion, the Creditor explains that it

> seeks additional time to seek an order for one or more 2004 examinations, to file a complaint to determine the dischargeability of the Creditor's judgement, or to have the bankruptcy proceeding dismissed. No matter the approach [non-dischargeability or dismissal], there is no prejudice that would be caused any party by the additional time sought.

Doc. # 16, p. 2. The Debtor filed timely opposition to that Motion, and the Creditor filed a response to the Debtor's opposition (doc. ## 19, 20). After granting the parties' motion to continue the hearing, the Court held a hearing on the contested mater on April 23, 2019, at which both parties were represented by counsel who presented their respective arguments and continued the hearing to June 11, 2019. On the Creditor's request, the Court granted the parties leave to file supplemental memoranda of law, which both parties filed (doc. ## 34, 35). This matter was fully submitted as of May 15, 2019.

## LEGAL ISSUE PRESENTED

The legal issue presented in this contested matter is whether the Creditor has met its burden of proof to enlarge the time for it to challenge the Debtor's discharge of its debt or seek dismissal of the case, beyond that set by the Bankruptcy Code and Rules.

## UNDISPUTED FACTS

The primary factual dispute in this case is whether the Creditor took reasonable steps, and acted diligently in pursuing its claims, within the 60-day period set out in Bankruptcy Rules 4007(c) and 1017(e). The dispute is not about what the Creditor did, but rather whether it was objectively sufficient to demonstrate "cause" to extend the deadline. The record establishes the following facts to be undisputed and to accurately describe the steps the Creditor has taken post-petition to determine whether it has grounds to dispute the dischargeability of its debt or seek dismissal of this case:

1. On December 6, 2017, the arbitrator issued a Final Decision and Award of Attorney's Fees and Costs, in favor of the Creditor, determining that the Debtor had breached a non-compete covenant (the "Judgment") [doc. # 34, p. 2].

2. On April 27, 2018, the Creditor's Judgment against the Debtor was entered in Superior Court in Marin County, California [doc. # 16, p. 2].

2

3. The Creditor retained local (Vermont) corporate counsel in May 2018 to domesticate the Creditor's California Judgment in Vermont [doc. # 34, p.2].

4. During the period of May 2018 through November 2018 the Creditor, through its local counsel, and Debtor, through his counsel, engaged in negotiations, seeking a possible settlement of the Judgment. Those negotiations failed[1] [doc. # 34, p. 2].

5. The Debtor filed a chapter 7 petition and schedules on November 19, 2018, just prior to the commencement of the long Thanksgiving weekend [doc. #34, p. 2].

6. The next week, the Creditor's Vermont corporate counsel "reached out about bankruptcy representation" and in mid-December, Tavian Mayer, Esq. was retained to represent the Creditor in the Debtor's bankruptcy case (hereafter the "Creditor's Attorney"). The Creditor's Attorney initially focused on the upcoming § 341 meeting, where the primary question was whether the Debtor had fully disclosed an interest in a trust [doc. #34, p. 2].

7. The initial meeting of creditors was scheduled for December 12, 2018, and adjourned to January 8, 2019 [doc. # 16, p. 1].

8. Until filing its Motion, the Creditor had not requested leave to conduct a 2004 examination regarding the dischargeability of the Creditor's debt [doc. # 19, p. 1; doc. # 16, p. 1].

9. The Debtor filed amended schedules on December 19, 2018 [doc. # 16, p. 1]. Based on those schedules [doc. # 7], the "question of the Debtor's trust was there resolved" [doc. # 34, p. 3].

10. Subsequent to the § 341 meeting, the Creditor's local corporate counsel and the Creditor's Attorney "conferred on where the matter should go from that point, and that was considered over the holiday break. In early January 2019, [the Creditor's Attorney] was brought into the case, and first began to consider whether there was a sufficient factual and legal basis to seek a non-dischargeability ruling." [doc. # 34, p. 3].

11. The Creditor's Attorney had a conference call with the Creditor and corporate counsel on January 11, 2019, in which the bankruptcy options were considered. Corporate counsel, having handled the arbitration proceeding, began the drafting of a complaint. The Creditor's Attorney continued researching and reviewed this Court's rulings on dischargeability [doc. # 34, p. 3].

12. On January 15, 2019, the Creditor filed a proof of claim in this case [doc. #34, p. 3].

13. On January 21, 2019, the Creditor's Attorney was provided a link enabling direct access to "the 10 gigabytes [!] of data that comprised the arbitration proceeding." The Creditor's Attorney found the "sheer amount of documentation" to be "daunting" and concluded "there would be insufficient time to read, much less fully absorb the arbitration record, making it clear to [the Creditor's Attorney] that more time would be needed" [doc. # 34, p. 3].

14. The deadline to file an objection to dischargeability was February 10, 2019 [doc. # 16, p. 1].

15. On February 8, 2019, the Creditor's Attorney timely filed the Creditor's Motion [doc. # 16, p. 1].

16. On February 28, 2019, the Debtor's attorney filed opposition to the Creditor's Motion asserting the Creditor had failed to set forth cause for the enlargement of time and arguing that the granting of the Motion would significantly prejudice the Debtor, both by delaying entry of his discharge and causing him to incur substantial legal fees to defend his position [doc. # 19, pp. 2, 7].

---

[1] The Creditor describes the failure to be the result of the Debtor "abruptly" filing a chapter 7 case [doc. # 34, p 2]; the Debtor asserts the negotiations failed because the Creditor "wanted far more than the value of [the Debtor's] non-exempt assets – an amount the Debtor was unable to pay" [doc. # 35, p. 5].

### DISCUSSION

In its Motion, the Creditor seeks to extend the deadline for it to file a motion to dismiss the Debtor's case or to file a complaint objecting to the dischargeability of its debt. The Federal Rules of Bankruptcy Procedure grant creditors a limited time for filing certain objections to the discharge of their debts in a bankruptcy case. As "[t]he discharge is the most important element of the debtor's fresh start, … the debtor has an interest in the prompt resolution of discharge issues and the law sets a tight time frame for discharge objections." In re Nowinski, 291 B.R. 302, 305 (Bankr. S.D.N.Y. 2003) (internal citations omitted). The pertinent rule establishing the deadline by which the Creditor must file a complaint objecting to dischargeability of its debt is as follows:

> (c) TIME FOR FILING COMPLAINT UNDER §523(c) IN A CHAPTER 7 LIQUIDATION, CHAPTER 11 REORGANIZATION, CHAPTER 12 FAMILY FARMER'S DEBT ADJUSTMENT CASE, OR CHAPTER 13 INDIVIDUAL'S DEBT ADJUSTMENT CASE; NOTICE OF TIME FIXED. Except as otherwise provided in subdivision (d), a complaint to determine the dischargeability of a debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. **On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision.** The motion shall be filed before the time has expired.

FED. R. BANKR. P. 4007(c) (emphasis added).

Rule 4007(c) thus requires that a complaint objecting to dischargeability of a debt be filed "no later than 60 days after the first date set for the meeting of creditors under § 341(a)." The same date establishes the deadline for the Creditor to file a motion to dismiss in this case:

> (1)  Except as otherwise provided in § 704(b)(2), a motion to dismiss a case for abuse under § 707(b) or (c) may be filed only within 60 days after the first date set for the meeting of creditors under § 341(a), **unless, on request filed before the time has expired, the court for cause extends the time for filing the motion to dismiss** …

FED. R. BANKR. P. 1017(e)(1) (emphasis added).

The first date set for the meeting of creditors in this case was December 12, 2018, and thus the complaint in this case, or a motion to dismiss, was to be filed on or before February 10, 2019. Both Bankruptcy Rules 1017(e) and Rule 4007(c) provide a bankruptcy court may, for "cause," enlarge the time to file a complaint or a motion to dismiss. Though neither of the rules define "cause" for purposes of extending the deadlines, see In re Nowinski, 291 B.R. 302, 305 (Bankr. S.D.N.Y. 2003), courts have used the same analysis to determine whether "cause" exists to extend the deadlines established by Rules

4

1017(e), 4007(c), and 4004(b).[2] As explained by a California Bankruptcy Court:

> The "for cause" term in Rule 1017(e)(1) must be read in conjunction with the same
> "for cause" provision in Rule 4004(a) & (b) (which limits the time to object to a
> debtor's discharge), and in Rule 4007(c) (which limits the time to file a complaint
> to determine the dischargeability of a debt). Each of those rules require that the
> subject action be taken within 60 days after the § 341(a) meeting of creditors,
> unless the court extends the time for cause. Since Rules 1017(e), 4004(a) & (b) and
> 4007(c) all deal essentially with the right to receive chapter 7 relief, then the
> standard for application of the time limits in those Rules should be consistent …
> Similarly, the court may look to cases interpreting the "for cause" exception in one
> of the Rules for guidance in its application to the other Rules.

In re Bomarito, 448 B.R. 242, 248 (Bankr. E.D. Cal. 2011). This Court will therefore employ the same

analysis in determining whether the Creditor has demonstrated sufficient "cause" to extend either the

deadline by which it must file a complaint objecting to the dischargeability of its debt, under Rule

4007(c), or a motion to dismiss under Rule 1017(e). As further indicated by the Bomarito court, this

analysis will be guided by pertinent caselaw interpreting the "for cause" exception under Rule 4004(b),

4007(c), and 1017(e). Id.

1. CREDITOR'S BURDEN TO OBTAIN ENLARGEMENT OF TIME TO CHALLENGE A DISCHARGEABILITY

While the Rules authorize an enlargement of time, the burden is on the creditor to show "cause"

for that enlargement. See Western Wood Fabricators, Inc. v. Sirmans (In re Sirmans), 2009 U.S. Dist.

LEXIS 47268, at *6 (E.D. Cal. 2009) ("Although the court is aware of no published Court of Appeals

cases setting forth what constitutes 'cause' for extension of the deadline to file a complaint under Rule

4007(c), other authority indicates that this a stringent standard to meet."). The question of whether to

enlarge the time rests within the discretion of the court. In re Nowinski, 291 B.R. 302, 305 (Bankr.

S.D.N.Y. 2003). "Cause is narrowly construed to promote the prompt resolution of the case and the

implementation of the debtor's 'fresh start.'" Id. Because of the importance of a debtor's fresh start,

courts considering whether to extend a deadline to object to discharge or dischargeability have

interpreted "cause" in a narrow, strict fashion.

---

[2] Bankruptcy Rule 4004(b) states:

(1) On motion of any party in interest, **after notice and hearing, the court may for cause extend the time to
object to discharge**. Except as provided in subdivision (b)(2), the motion shall be filed before the time has
expired.

FED. R. BANKR. P. 4004(b)(1) (emphasis added). Bankruptcy Rule 4004(b)(1), which applies to objections to a debtor's
discharge, in toto, utilizes nearly identical language regarding an extension of time and, as such, caselaw interpreting "cause"
for purposes of Rule 4004(b)(1) is applicable to the same analysis under Rule 4007(c). See In re Chatkhan, 455 B.R. 365, 367
(Bankr. E.D.N.Y. 2011) ("The legal standard for evaluating a request for an extension of time to file a complaint to object to
the debtor's discharge under Rule 4004(b), and to file a complaint to determine the dischargeability of a debt under Rule
4007(c), is the same."); In re Gotay, 2005 Bankr. LEXIS 3479, at *3 n. 4 (Bankr. S.D.N.Y. 2005) (finding that, because of the
nearly identical language in both rules, "the same analysis and conclusions under Fed. R. Bankr. P. 4004(b) will apply in
determining [the creditor's] request to extend time to file a complaint requesting the determination of dischargeability …")

As a general matter, the deadlines provided for in the Federal Bankruptcy Rules "are to be interpreted strictly and in a manner consistent with the Code's policies in favor of providing a fresh start for the debtor and prompt administration of the case." … Specifically, Fed. R. Bankr. P. 4004(b) was enacted in 1983 to circumscribe the flexibility permitted bankruptcy courts by predecessor Bankruptcy Rule 404(c), which contained no cause or notice requirements, and permitted requests for an extension of time to file objections to discharge after the deadline had expired. See 9 COLLIER ON BANKRUPTCY 4004.RH[1] at 4004–24; …The time for filing objections to discharge is now specifically excepted from those time periods a bankruptcy court may waive under the more liberal "excusable neglect" standard of Fed. R. Bankr. P. 9006(b)(1). See FED. R. BANKR. P. 9006(b)(3).

In re Grillo, 212 B.R. 744, 746 (Bankr. E.D.N.Y. 1997) (case citations omitted). In Grillo, the Eastern District of New York Bankruptcy Court, like many other courts, held that the short time period set out in Rule 4004(b) is "to be interpreted strictly and in a manner consistent with the Code's policies in favor of providing a fresh start for the debtor and prompt administration of the case." Id. at 746 (citing Taylor v. Freeland & Kronz, 938 F.2d 420 (3d Cir.1991), aff'd, 503 U.S. 638 (1992)). A creditor asking to extend the deadline to object to discharge or dischargeability (or to file a motion to dismiss) "must demonstrate cause for the extension of time or the request shall be denied." In re Weinstein, 234 B.R. 862, 866 (Bankr. E.D.N.Y. 1999).

### 2. FACTORS TO CONSIDER WHEN DETERMINING IF CREDITOR MET ITS BURDEN

Because cause is not defined in the Bankruptcy Code, courts look to several factors to determine if the creditor has met that burden. The factors that inform the court's discretion include

a) whether the creditor had sufficient notice of the deadline and the information to file an objection;
b) the complexity of the case;
c) whether creditor exercised diligence;
d) whether the debtor refused in bad faith to cooperate with the creditor; and
e) the possibility that a proceeding pending in another forum will result in collateral estoppel of the relevant issues.

In re Nowinski, 291 B.R. 302, 305–306 (Bankr. S.D.N.Y. 2003). These factors "provide an analytical framework and are not exclusive." In re Chatkhan, 455 B.R. 365, 368 (Bankr. E.D.N.Y. 2011). The Court assesses the Creditor's Motion through the lens of each factor, and the totality of circumstances in this case, to determine whether the Creditor met its burden in establishing cause to extend the deadlines.

### (a) *The Creditor had Sufficient Notice of the Deadlines*

There is no contention here that the Creditor lacked sufficient notice of the deadlines by which to file an objection to dischargeability or a motion to dismiss. The Clerk of the Court sent notice of the 60-day deadline to the Creditor on November 21, 2018 (doc. # 4), which specified, on line 9, that the "deadline to object to discharge or to challenge whether certain debts are dischargeable" was "2/10/19."

6

The certificate of notice indicates this information was sent to the Creditor's Vermont bankruptcy counsel as well as its attorney in California, thus establishing that sufficient notice of the pertinent deadlines was provided to the Creditor.

This factor weighs against granting an extension of time.

### (b) *This Case is not Sufficiently Complex to Warrant Extending the Deadlines*

A bankruptcy court is within its rights to extend a creditor's deadline to object to dischargeability of its debt, or to file a motion to dismiss, in instances in which the case is so complex as to require more time to determine whether such a filing is warranted. In In re Kellogg, 41 B.R. 836 (Bankr. W.D. Okl. 1984), the bankruptcy court found the moving creditor's argument to that effect persuasive, specifically finding "that the matters involved are complex, related to and intertwined with another case," and include "several pending adversary proceedings which may affect administration of the estate." Id. at 838. In granting the request for an extension of time, the Kellogg court concluded, "[f]rom previous hearings and contested matters in the case the Court is aware that there are complexities and that many parties and issues are affected." Id.

The inverse is also true: A creditor's failure to act diligently in a case that is straightforward, and lacks complexity, will be weighed against that creditor if it files a motion to enlarge time. In In re Nowinski, 291 B.R. 302 (Bankr. S.D.N.Y. 2003), the movant creditor cited the extensive amount of property the chapter 7 debtor owned, as well as the difficulty of valuing the debtor's artwork and other unique assets, as evidence of complexity warranting an extension of the deadline to object to discharge. Id. at 307. The Southern District of New York Bankruptcy Court rejected these arguments, found that, while the debtor "owns more property than the usual chapter 7 debtor, he particularized and identified those assets, including his artwork in the statement of financial affairs," and questioned how "authentication or valuation bear on the issue of discharge since [the debtor] disclosed the assets." Id. The Nowinski court concluded that, "[g]iven Wells Fargo's lack of diligence during the ninety days between its notice of appearance and its motion for an extension, its claims that the case is complex or that Nowinski failed to cooperate are unpersuasive." Id. See also In re Kramer, 492 B.R. 366, 371 (Bankr. E.D.N.Y. 2013) (holding "[t]his case is not any more complex than a normal chapter 7 case."); In re Gotay, 2005 Bankr. LEXIS 3479, at *6 (Bankr. S.D.N.Y. 2005).

Additionally, the complexity factor typically carries less weight in the "for cause" analysis than the diligence factor. See In re Grillo, 212 B.R. 744, 747 (Bankr. E.D.N.Y. 1997) ("The majority view is that there can be no cause justifying an extension of time to object to discharge where the party seeking the extension failed to diligently pursue discovery prior to expiration of the deadline."). Consequently, a

7

case's complexity alone is insufficient to overcome a creditor's failure to take meaningful steps toward a potential filing.

In contrast to the compelling circumstances in <u>Kellogg</u>, here, the Creditor's only argument on the complexity factor is that there was a "voluminous record" of documentation from the arbitration that he needed to sort through (doc. # 16, p. 2). The magnitude of a record, while bearing on the issue, does not necessarily establish "complexity," particularly if the "voluminous" records were available to the creditor prepetition. In <u>In re Watson</u>, 2014 Bankr. LEXIS 5402 (Bankr. N.D. Fla. 2014), the bankruptcy court found that, subsequent to the debtors' bankruptcy filing, the moving creditor "conducted 2004 examinations and reviewed thousands upon thousands of pages of complex discovery" composed of "at least ten thousand pages of documents, including bank records, financial documents, papers from a divorce action, and business records of around forty entities." <u>Id.</u> at **4, 11. In light of these facts, the bankruptcy court granted the creditor's motion to extend the deadline to object to discharge, under § 727. Importantly, it did so based not only on the volume and complexity of the records the creditor's bankruptcy attorney had to review, which required "over 100 hours," <u>id.</u> at *4, but also after recognizing the creditor's attorney's diligence, as evidenced by his significant discovery efforts and numerous 2004 examinations. <u>Id.</u> at **2–7. Although the <u>Watson</u> court granted the creditor's motion to extend the deadline to object to the debtor's discharge under § 727, due in part to the high volume of records submitted postpetition, it *denied* the creditor's motion to extend its deadline for objecting to dischargeability under § 523, noting the key differences between the information the creditor required to object under §§ 727 and 523:

> In many instances, a creditor may have knowledge of a potential § 523 cause of action before the debtor files bankruptcy. By contrast, in most instances creditors will not have the information necessary with which to determine whether to file a § 727 complaint until after the debtor files his bankruptcy petition. […] Many of the actions giving rise to the objection [under § 727] would not occur until after the petition date and, in some cases, after the original deadline has expired […] The same is not true for determining the dischargeability of a particular debt under § 523. Generally the acts giving rise to a nondischargeable debt occur prepetition. In fact, in many cases a creditor has already filed a lawsuit or even obtained a judgment for the underlying debt by the time that the bankruptcy case is filed.

<u>Id.</u> at ** 11–12 (quoting <u>In re Moseley</u>, 470 B.R. 223, 227 (Bankr. M.D. Fla. 2012)). In denying the creditor's motion to extend the § 523 dischargeability deadline, the <u>Watson</u> court found the creditor "had sufficient knowledge well before the Debtors filed bankruptcy that [the creditor] had a potential claim for 'aiding and abetting fraudulent transfers' [and in fact] learned of and sued on the fraudulent transfers [in state court] in 2008 [five years before the Debtors' bankruptcy filings]." <u>In re Watson</u>, 2014 Bankr.

LEXIS 5402, at *14 (Bankr. N.D. Fla. 2014). Furthermore, and pertinent to the facts at bar, the <u>Watson</u>

court was not swayed by the argument that the creditor's bankruptcy counsel did not represent the

creditor "in its state court litigation, and so was apparently not aware of any of these facts until after [the

creditor] retained him to represent it in this Bankruptcy case." <u>Id.</u> at *14 n. 38. The fact that the

creditor's bankruptcy attorney may have had a learning curve, post-petition, was not enough to

demonstrate the creditor was entitled to more time to gather information about whether to file a § 523

action. <u>Id.</u> at *14. In determining whether there was "cause" to extend the deadlines under §§ 727 and

523, the <u>Watson</u> court carefully considered *when* the factual basis for filing an objection to discharge or

dischargeability was known to the creditor, and concluded that if the facts and circumstances supporting

a basis for an objection were known to the creditor in advance of a debtor's bankruptcy, a claim of

"voluminous" records or documentation is insufficient to warrant extending the deadline.

In discerning whether the Creditor has established complexity here, the Court looks to both the

nature of the issue and when the Creditor first knew of the essential facts which could give rise to a suit

against the Debtor. As to complexity, the question the Creditor seeks to answer here is a straightforward

one: Do the facts underlying the Creditor's Judgment establish a sound legal and factual basis for

challenging the dischargeability of its debt or seeking dismissal of the case? The factual basis is *the same*

here for both those potential actions and was known to the Creditor well before the Debtor filed his

bankruptcy petition. The Creditor acknowledges that in the Motion (doc. # 16, p. 2).

While it may be true the Creditor's Attorney "was not aware of the facts" until after the Creditor

retained him to represent it in this bankruptcy case, and he needed to expend significant time and effort

to fully absorb the arbitration materials, the factual record was thoroughly established prepetition,

through the arbitration proceeding and Judgment, and the Creditor "and its state court counsel, on notice

of these facts for years, had ample time" to make the Creditor's attorney aware of them, and to instruct

him to pursue them, before the expiration of the deadline on February 10, 2019. <u>In re Watson</u>, 2014

Bankr. LEXIS 5402, at *14 n. 38 (Bankr. N.D. Fla. 2014). The Creditor had the information that would

reveal whether there were grounds to challenge dischargeability or seek dismissal of this case, well in

advance of retaining the Creditor's attorney, and it has not demonstrated this case was so complex as to

justify additional time under the applicable Bankruptcy Rules. <u>See</u> <u>In re Chatkhan</u>, 455 B.R. 365, 370

(Bankr. E.D.N.Y. 2011) (finding creditor did not explain how the alleged complexity of the matter

"prevented him from objecting to [] the dischargeability of his debt prior to the deadline.")

Thus, this factor weighs against granting an extension of time.

*(c) **The Creditor has not Acted Diligently in Pursuing Discovery Prior to Filing its Motion***

The weightiest factor in determining whether a creditor has met its burden of showing cause to extend the deadline is whether it diligently pursued discovery prior to filing its motion to enlarge time. This is also the most difficult factor to weigh since each case is different, there is no firm objective test, and it requires analysis of the particular facts and circumstances presented. See Phillips v. Generations Family Health Ctr., 723 F.3d 144, 153 (2d Cir. 2013) (finding that, in determining whether reasonable diligence was demonstrated for purposes of equitable tolling, a court should "consider all the relevant facts and circumstances – including whether the plaintiff should have known to investigate the issue, to determine, utilizing its own discretion, whether the plaintiff and lawyer were sufficiently diligent.").

This factor is essential. "The majority view is that there can be no cause justifying an extension of time to object to discharge where the party seeking the extension failed to diligently pursue discovery prior to expiration of the deadline." In re Chatkhan, 455 B.R. 365, 368 (Bankr. E.D.N.Y. 2011) (quoting In re Grillo, 212 B.R. 744 (Bankr. E.D.N.Y. 1997)). See also In re Farhid, 171 B.R. 94, 97 (N.D. Cal. 1994) (denying extension where creditor failed to attend § 341 meeting of creditors or request any Rule 2004 examination). It is informative to examine other cases, to compare the steps the Creditor and the Creditor's Attorney took in this case, with the efforts of their counterparts in other cases in which courts found the creditor's actions did and did not demonstrate sufficient diligence to warrant an extension of the deadlines in Bankruptcy Rules 4004(b), 4007(c), and 1017(e).

The Court begins this survey with a couple of cases where the creditor failed to meet its burden on this factor. In Nowinski, the creditor filed a notice of appearance, and thereafter, according to the court, that creditor "failed to take any steps during the ninety days to acquire the information it now says it needs more time to get," including failing to attend the § 341 meeting and failing to seek a Rule 2004 examination "until two weeks after the deadline for objections to discharge." In re Nowinski, 291 B.R. 302, 306 (Bankr. S.D.N.Y. 2003). The court found that the creditor's "[k]nowledge of the deadline [to file a complaint objecting to discharge or dischargeability] coupled with the failure to diligently seek discovery [was], absent unusual circumstances, fatal to an extension motion." Id.

In In re Chatkhan, 455 B.R. 365, 369 (Bankr. E.D.N.Y. 2011), the creditor had notice of the debtor's bankruptcy filing in August of 2010, retained counsel who attended the § 341 meeting in November 2010, and was fully aware of the January 9, 2011 deadline to object to discharge or dischargeability. Yet, that creditor waited until "10 days prior to the deadline to file his proof of claim, and until January 9, 2011, the day of the deadline, to file his Extension Motion." Id. The Eastern District of New York Bankruptcy Court found "aside from filing his proof of claim and the Extension Motion,

there is no indication that [the creditor] took any action during the 60-day period after the 341 meeting."
Id. The Chatkhan court based its denial of the creditor's motion to enlarge time, in large measure, on its finding that the creditor displayed a lack of diligence.

Some cases focus on the timing of the attorney's retention and hold that when creditors cannot demonstrate they undertook efforts to engage in discovery or Rule 2004 examinations, they will not prevail in motions to enlarge time, even when that creditor's bankruptcy attorney was retained late in the process and required more time to acquaint themselves with the factual underpinnings of a potential objection. For example, in Mendelsohn, the creditor "ignored the section 341 meeting" and asserted he needed more time to conduct a Rule 2004 examination of the debtor. In re Mendelsohn, 202 B.R. 831, 832 (Bankr. S.D.N.Y. 1996) The creditor in the Mendelsohn case "did not consult bankruptcy counsel until the eve of the [deadline to object to dischargeability], and counsel, new to case, understandably need[ed] more time to frame a complaint under section 523(a)," but the court nonetheless held this "lack of diligence in retaining counsel" did not constitute cause under Rule 4007(c). Id.

There are also cases in which a creditor could show it had at least taken some steps toward discovery, but the court nonetheless denied an enlargement of time to object to discharge or dischargeability, finding the creditor's efforts did not add up to "sufficient diligence." In Kramer, the creditor in that case had attended the § 341 meeting and had filed a Rule 2004 application in advance of the deadline. The Eastern District of New York Bankruptcy Court found a "lack of diligence" and "thus, no cause [] shown as to why [the creditor] should be given additional time to object to the Debtor's discharge of debts." In re Kramer, 492 B.R. 366, 372 (Bankr. E.D.N.Y. 2013). It explained why it reached that conclusion, despite the creditor's filing of the Rule 2004 application, as follows:

> For the six-week period after the section 341 [the creditor] had the opportunity to commence its investigation of the Debtor but it did nothing in the way of discovery until it filed the Rule 2004 Application … twenty days prior to the expiration of the objection deadline. Even then, the act of filing of the Rule 2004 Application itself in advance of the expiration deadline is not evidence of the creditor being diligent but rather the actual exercise of discovery through the examination of the debtor and the timely request for the production of documents.

Id. at 372.

At the other end of the spectrum, there are cases in which the creditor has sought an extension of time, the debtor objected, and the court found the creditor had acted with sufficient diligence to prevail. For example, in Morris, the Northern District of New York Bankruptcy Court found the creditor's need for additional time to conduct discovery warranted, based in large measure on the diligence with which the creditor was pursuing discovery in a related state court action. In re Morris, 2010 Bankr. LEXIS

11

1875, at **4-7 (Bankr. N.D.N.Y. 2010). In Morris, the creditor initiated a state court action against the debtors, but that case "was commenced only three weeks prior to Debtors' bankruptcy filing, such that any meaningful discovery would still be outstanding." Id. at *6 (emphasis added). Finding the debtors' responses to discovery in the state court would "be instrumental" in allowing the creditor to determine whether it had any actionable bankruptcy claims, the Morris court granted the creditor an additional sixty days to conduct its discovery and file a complaint objecting to the debtors' discharge or dischargeability of its debt. Id. at *7. There are also cases in which a debtor's lack of cooperation or delay in delivering requested documentation factor into the court's assessment of a party's diligence. In Berger, the bankruptcy court found the chapter 7 trustee demonstrated adequate diligence in reviewing the debtor's financial information and requesting certain documentation, but where the trustee had not received the requested documentation in time to file a complaint objecting to discharge. In re Berger, 2012 Bankr. LEXIS 2752, at **5-6 (Bankr. D.N.D. 2012). By contrast, there is no allegation here that the Creditor has requested information the Debtor has not delivered. Instead, the basis of the Creditor's potential objection to dischargeability or motion to dismiss rests entirely on the conduct at issue in the arbitration proceeding and not on newly requested information the Debtor has been unable or unwilling to deliver in a timely fashion.

The Creditor's conduct is much more similar to the facts in the cases in which the extension was denied. The Creditor did not file a Rule 2004 application, see doc. # 16, p. 2 ("Creditor seeks additional time to seek an order for one or more 2004 examinations …"), and, even if the Creditor had done so, "the act of filing of the Rule 2004 application itself in advance of the expiration deadline is not evidence of the creditor being diligent but rather [diligence is shown by] the actual exercise of discovery through the examination of the debtor and the timely request for the production of documents." In re Kramer, 492 B.R. 366, 372 (Bankr. E.D.N.Y. 2013). The Creditor also asked for no documents from the Debtor relating to the Judgment. Compare with In re Berger, 2012 Bankr. LEXIS 2752, at **5-6 (Bankr. D. N.D. 2012). In contrast to the circumstances in Morris, the Creditor has already filed, pursued, and completed its state court action against the Debtor, and has not provided adequate evidence of diligence on its part in pursuing new discovery during the pendency of the Debtor's bankruptcy case, either directly in this case or through a related state court action. In re Morris, 2010 Bankr. LEXIS 1875, at **4-7 (Bankr. N.D.N.Y. 2010). The request for an extension in this case appears to arise from the Creditor's attorney's desire for more time to discern whether the facts underlying the Judgment, and conclusions reached in the Judgment, are sufficient to constitute grounds for an exception to discharge or dismissal. This is not a sufficient basis for granting the Creditor an extension of time, and delaying entry

of the Debtor's discharge, even where, as here, the Creditor's attorney was not retained until after the bankruptcy case was filed.

Thus, this critical factor weighs against granting an extension of time.

*(d) The Debtor has Cooperated with the Creditor's Questioning and its Discovery Process*

A creditor may show sufficient cause to extend the deadline where a debtor has been uncooperative or obstructive in the discovery process. See In re McCormack, 244 B.R. 203, 208 (Bankr. D. Conn. 2000) (finding cause to extend time under Rule 4007(c) due to "lack of discovery, … caused principally by the Debtors' change of counsel, Debtors' counsel's non-responsiveness, and attendant disputes between attorneys."); C.f. Western Wood Fabricators, Inc. v. Sirmans (In re Sirmans), 2009 U.S. Dist. LEXIS 47268, at *6 (E.D. Cal. 2009) (affirming bankruptcy court decision to deny creditor an extension under Rule 4007(c) where there was no evidence that the debtor was unresponsive to discovery requests in the bankruptcy case). "[T]o justify an extension of time to object to discharge or dischargeability, a creditor must demonstrate that 'the debtor has refused in bad faith to cooperate with the creditor." In re Chatkhan, 455 B.R. 365, 368 (Bankr. E.D.N.Y. 2011) (quoting In re Bressler, 2007 Bankr. LEXIS 93, at *11 (Bankr. S.D.N.Y. 2007)) (emphasis original). "Without a finding of bad faith on the part of the debtor, however, mere recalcitrance in discovery does not support a finding of cause." In re Nowinski, 291 B.R. 302, 307 (Bankr. S.D.N.Y. 2003).

Here, the Creditor does not allege the Debtor has been unresponsive to any discovery requests or failed to cooperate with it during this bankruptcy case. The Creditor did not contest the Debtor's representation that he "answered all the questions asked by creditor's counsel [at the § 341 meeting] …. [and] [n]o request was made for a continuance or opportunity to ask further questions" (doc. # 19, p. 1).

Therefore, this factor weighs against granting an extension of time.

*(e) There is No Additional Proceeding in Another Forum that Could Result in Collateral Estoppel*

One of the factors in determining whether to extend the deadline to object to discharge or dischargeability is "the possibility that proceeding in another forum will result in collateral estoppel." In re Nowinski, 291 B.R. 302, 305 (Bankr. S.D.N.Y. 2003). Courts have granted extensions under Bankruptcy Rules 4004(b) and 4007(c) where the resolution of pending litigation could be determinative of the creditor's objection to discharge or dischargeability. See In re Morris, 2010 Bankr. LEXIS 1875 (Bankr. N.D.N.Y. 2010) (granting extension where pending action in state court to determine debtor's liability for diversion of trust funds could be determinative of the dischargeability of his debt to the creditor); In re Weinstein, 234 B.R. 862 (Bankr. E.D.N.Y. 1999) (granting extension pending decision in securities fraud arbitration, which would fix liability and the amount of the debt in question). Here, the

13

primary proceeding in another forum, the state court action in California, has already been completed and the arbitrator issued a final decision on the Debtor's liability to the Creditor. Thus, there is no additional, pending proceeding in another forum that could result in collateral estoppel.

Consequently, this factor also weighs against granting an extension of time.

### 3. Creditor Failed to Satisfy its Burden for any Enlargement of Time

In light of the nature of the legal question at issue, the availability of the salient information to the Creditor prior to the filing of this case, as well as the Creditor's minimal interaction with the Debtor and lack of discovery efforts during this case, and weighing the factors bankruptcy courts have utilized in determining whether a movant has met its burden of showing "cause" to extend a deadline under Rules 4004(b), 4007(c), and 1017(e), the Court finds both the diligence and complexity factors – the two most important factors here – weigh against granting an extension, and none of the pertinent factors weigh in favor of granting the Creditor the relief it seeks in the Motion. Moreover, when these considerations are weighed against the Debtor's right to a prompt resolution of the case and a determination on his discharge, which "is the most important element of the Debtor's fresh start," In re Nowinski, 291 B.R. 302, 307 (Bankr. S.D.N.Y. 2003), the scales tip decidedly against an extension of the Bankruptcy Rule deadlines. "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." Taylor v. Freeland & Kronz, 503 U.S. 638, 644 (1992).

### Conclusion

Based on the foregoing rationale, the Court finds the Creditor has failed to meet its burden of proof because it has not established the facts and circumstances of this case constitute "cause" for an extension of the deadlines established by the Bankruptcy Rules. Accordingly, the Court denies the motion of U.S. Sports Camps, Inc. to (1) enlarge time for it to file a complaint to have its debt excepted from discharge, under 11 U.S.C. § 523, or a motion to dismiss this case, under 11 U.S.C. § 707; and (2) to delay entry of the Debtor's discharge.

This constitutes the Court's findings of fact and conclusions of law.

July 19, 2019                                            Colleen A. Brown
Burlington, Vermont                                     United States Bankruptcy Judge